UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

**MERL MCDONALD,**

   **Plaintiff,**

vs.

                              **CASE NO.:**

**NICHIHA USA, INC.,**

   **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Merl McDonald ("Plaintiff"), by and through her undersigned counsel brings this action against Defendant Nichiha USA, Inc. ("Defendant"), and states as follows:

## NATURE OF CASE

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of her rights under the Age Discrimination in Employment Act of 1967, as amended ("ADEA").

## ADMINISTRATIVE PROCEDURES

1. Plaintiff has fulfilled all conditions necessary to proceed with this cause of action. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Nichiha USA, Inc., on

August 27, 2024. The EEOC issued its Notice of Right to Sue on April 22, 2025.

2.  Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## JURISDICTION AND VENUE

3.  Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343.

4.  This Court is an appropriate venue for all Plaintiff's claims under 28 U.S.C. § 1391(b), because all of the parties reside within the Middle District of Georgia, and all or a substantial majority of the events giving rise to Plaintiff's claims occurred in the judicial district.

## PARTIES

5.  Plaintiff is a female citizen of the United States of America and a resident of the State of Georgia and at all such times.

6.  Plaintiff is an adult individual who currently resides in Bonaire, Georgia.

7.  Plaintiff was hired by Defendant in Macon, Georgia, (Macon-Bibb County).

8.  At all times relevant hereto, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

9. Defendant may be served by delivering a copy of the Summons and Complaint upon the registered agent Bruce C. McCall, located at 1180 West Peachtree Street NW, Suite 2100, Atlanta, Georgia 30309.

## STATUTORY PREREQUISITES

10. Plaintiff is a female citizen of the United States of America and a resident of the State of Georgia and at all such times, Plaintiff was an "employee" of Defendant as defined under the ADEA at 29 U.S.C. § 623(a)(1).

11. Plaintiff is a female individual who suffered discrimination based on her age.

12. Plaintiff is a member of a class of individuals protected by the ADEA.

13. Plaintiff was qualified for her position as an HR Coordinator/Recruiter.

14. At all times relevant to this Complaint, Defendant has employed twenty (20) or more employees for the requisite duration under the ADEA.

15. The Defendant meets the statutory criteria for coverage as an "employer" under the ADEA.

16. Plaintiff meets the statutory criteria for coverage as an "employee" under the ADEA.

17. Plaintiff timely filed her Charge of Discrimination with the EEOC on August 27, 2024.

18.  On April 22, 2025, the EEOC issued its Notice of Right to Sue. Therefore, this Complaint is being filed within ninety (90) days of Plaintiff receiving her Notice of Right to Sue.

19.  Accordingly, Plaintiff has complied with all other requirements and all other prerequisites prior to bringing this lawsuit.

## FACTUAL ALLEGATIONSS

20.  Plaintiff was hired on or about July 12, 2021, by Defendant through the staffing agency STS Technical Services, LLC, to work as a Recruiter within the Company's Human Resources (HR) Department at its manufacturing facility located at 3150 Avondale Mill Road, Macon, Georgia 31216.

21.  For purposes of the ADEA, Defendant is Plaintiff's "employer."

22.  Alternatively, for purposes of the ADEA, Defendant and STS Technical Services, LLC, operated as joint employers, as both entities contracted with one another for the performance of employment tasks and retained sufficient control over the terms and conditions of Plaintiff's employment.

23.  Plaintiff's duties as a Recruiter included sourcing, interviewing, and onboarding job candidates for Defendant's manufacturing plants: Plant 1 and the newly opened Plant 2.

24.  Plaintiff was initially hired in a temporary capacity but was assured by then-HR Director Jeff Koepke that the role would become permanent.

4

25. Koepke left Defendant around October 2021 and was replaced by Mark Vincent in January 2022.

26. In January 2022, the Defendant's HR Coordinator, Alexia Taylor, left the business. Plaintiff assumed many of her responsibilities in addition to performing Recruiter duties, effectively serving in both roles.

27. In February 2022, the Defendant hired Amy Kelly as HR Manager.

28. Plaintiff thereafter reported directly to Kelly and expressed interest in being considered for the permanent HR Coordinator position.

29. Kelly routinely dismissed Plaintiff's efforts to be considered for the role and informed her she would need to apply through the formal hiring process.

30. Plaintiff submitted an application, interviewed for the position, and performed well in the interview.

31. In May 2022, despite Plaintiff's qualifications including over 30 years of HR experience the Defendant hired Gloria Flowers, a woman in her early 20s with no prior HR experience and not an internal candidate.

32. Kelly assigned Plaintiff to train Flowers for the HR Coordinator position, despite the fact that training was outside Plaintiff's job scope as a Recruiter.

33. Plaintiff expressed disappointment at not being selected. Kelly responded that Flowers was hired for her "savvy computer skills," which Plaintiff

reasonably interpreted as a coded reference to Plaintiff's age (69 at the time) and presumed inability to learn new technologies.

34. Plaintiff had already demonstrated proficiency with computer systems required in the HR Coordinator role.

35. In June 2022, after the resignation of HR Business Partner Dana Butler, Plaintiff was again tasked with assuming additional responsibilities those of the HR Business Partner on top of her other duties.

36. Plaintiff continued in this role until December 2022 without issue.

37. At no time during her employment was Plaintiff given any formal or informal notice of performance or disciplinary problems.

38. In March 2023, Kelly terminated Plaintiff's employment, stating that her services were no longer needed.

39. In July 2023, following the termination of the newly hired HR Business Partner, Darlene Hagger, Kelly asked Plaintiff to return to work for the Defendant. Plaintiff agreed and resumed work in a temporary capacity, titled "Plant/HR Coordinator – Temp filling in."

40. Plaintiff once again performed duties associated with three separate roles: HR Business Partner, HR Coordinator, and Recruiter.

41.  Plaintiff also continued to train Flowers.

42. On January 5, 2024, Flowers resigned.

43. Plaintiff again assumed even more responsibilities associated with the HR Coordinator role.

44. In March 2024, the Defendant posted an opening for an HR Specialist, which had substantially the same duties as the HR Coordinator role.

45. Plaintiff was neither informed of the opening by Kelly nor encouraged to apply, despite her strong qualifications and prior expressed interest.

46. Later that month, Plaintiff overheard a conversation between Kelly and the HR Training Manager, during which they disparaged Plaintiff based on her age, further claiming she lacked comprehension and capability.

47. When Plaintiff complained to the HR Training Manager about the overheard conversation, the HR Training Manager laughed and made age-related comments, such as questioning why Plaintiff would want to work at age 71 and sarcastically remarking, "we will surely miss that wisdom."

48. Plaintiff reasonably believed these comments were both discriminatory and retaliatory in nature and deterred from making a formal report due to Kelly's close relationship with the Training Manager and fear of further retaliation.

49. In April 2024, Kelly entered Plaintiff's office and shouted at her, accusing her of incorrectly entering information into a new internal calendar system.

50. Kelly concluded the encounter by questioning whether Plaintiff could ever "comprehend" the job.

51. Plaintiff observed a clear double standard: Kelly offered encouragement and support to younger employees when they made mistakes, while belittling Plaintiff when she did the same.

52. Later in April, Plaintiff applied for the HR Specialist position and was only interviewed by the new HR Business Partner, not by the six-person panel assembled for the selection process.

53. Kelly told Plaintiff that she didn't need to be interviewed again because she had interviewed for a "similar" role in 2022, and dismissed Plaintiff's concerns.

54. On April 30, 2024, Kelly informed Plaintiff that the HR Specialist position had been filled by a candidate referred to by the HR Training Manager, who lacked the minimum qualifications stated in the job posting including a bachelor's degree.

55. Plaintiff, by contrast, had a bachelor's degree in Business Management and had completed 15 graduate-level credits.

56. Shortly after filling the HR Specialist position, Kelly again informed Plaintiff that her services were no longer needed.

57. Plaintiff's final day with the Defendant was May 10, 2024.

58. Throughout her employment, Plaintiff was highly qualified, demonstrated consistent and effective performance, and took on numerous responsibilities beyond her original role without complaint.

## COUNT I
## VIOLATION OF THE AGE DISCRIMINATION
## IN EMPLOYMENT ACT, AS AMENDED

59. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

60. Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitute unlawful discrimination on the basis of her age in violation of ADEA, as amended.

61. Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

62. The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her age.

63. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of the age discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

## COUNT II
## RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, AS AMENDED

64. Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

65. Plaintiff engaged in protected activity under the ADEA when she complained of age discrimination.

66. Specifically, in late-March 2024, Plaintiff complained to the HR Training Manager about the conversation she overheard between the HR Training Manager and Kelly disparaging Plaintiff due to her age.

67. Defendant retaliated against Plaintiff by failing to provide her with a proper interview for the HR Specialist position as a result of Plaintiff's protected activity.

68. Plaintiff reasonably believed these comments were retaliatory in nature and felt deterred from making a formal report regarding same due to Kelly's close relationship with the HR Training Manager and fear of further retaliation.

69. Nonetheless, Defendant further retaliated against Plaintiff by terminating her employment as a result of Plaintiff's protected activity.

70. Defendant engaged in unlawful employment practices prohibited by the ADEA by retaliating against Plaintiff as set forth above.

71. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal law. As a direct and proximate result of

the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for a trial by jury and all legal and equitable relief allowed by law including:

a. Back pay and benefits;

b. Interest on back pay and benefits;

c. Front pay and benefits;

d. Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

e. Injunctive relief;

f. Prejudgment interest;

g. Trial by jury as to all issues;

h. Costs and attorney's fees; and

i. Such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: <u>July 21, 2025</u>

        Respectfully submitted,

***/s/ Jordan P. Rose***
Jordan P. Rose, Esq.
GA Bar No. 851471
Anthony J. Hall, Esq.
Georgia Bar No. 318028
THE LEACH FIRM, P.A.
1560 N. Orange Avenue, Suite 600
Winter Park, Florida 32789
Telephone: (407) 574-4999
Facsimile: (833) 523-5864
Email: ahall@theleachfirm.com
Email: jrose@theleachfirm.com
Email: aperez@theleachfirm.com
Email: ppalmer@theleachfirm.com
***Attorneys for Plaintiff***